# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

FLORA LOOMIS and BRIAN LOOMIS,   )
                                          )
              Plaintiffs,         )
                                          )
      v.                     )   No. 2:11-CV-04184-NKL
                                          )
WING ENTERPRISES, INC. d/b/a LITTLE )
GIANT LADDER,                  )
                                          )
             Defendant.       )
                                          )

## ORDER

Pending before the Court are Defendant Wing Enterprises, Inc. d/b/a Little Giant Ladder's motion for summary judgment [Doc. # 80] and motion to exclude the opinions and tests of Professor Douglas Smith [Doc. # 78]. Also pending is Plaintiffs Flora and Brian Loomis' motion to exclude the expert testimony of Dr. Knox [Doc. # 67]. For the reasons set forth below, Defendant's motion to exclude the opinions and tests of Professor Smith is GRANTED in part[1] and Defendant's motion for summary judgment is GRANTED. Due to the disposition of Defendant's motions, Plaintiffs' motion to exclude the testimony of Dr. Knox is DENIED as moot.

## I.    Undisputed Facts

---

[1] Defendant's motion to exclude Dr. Smith's testimony is addressed only to the extent necessary to support Defendant's entitlement to summary judgment.

1

This products liability case concerns an accident Flora Loomis had while using a Little Giant Model 26 Articulating Ladder, which Plaintiffs purchased from Defendant. This model of ladder is designed with two locking center hinges that permit the ladder to be used in five different configurations. In addition, this model of ladder has four lock tab assemblies that allow the user to adjust the ladder's height. By unlocking the lock tabs, the user can extend or telescope the ladder. In order to secure the ladder at the desired height, the user must reinsert the lock tabs.

On receipt of the ladder, each Plaintiff inspected the ladder and its packaging and found no damage to either. Plaintiffs did, however, experience difficulty with one of the ladder's lock tabs from their first use of the ladder. Specifically, one lock tab was more difficult to reinsert than the others and required some extra effort to fully engage. Plaintiffs did not believe that this difficult lock tab made the ladder unsafe for use and were always careful to give this lock tab an extra push to make sure it was secure. Each Plaintiff used the ladder on several occasions prior to Flora Loomis' accident without any problems, with the exception of the difficult lock tab. The ladder also came with an Instructional Manual and additional warnings were affixed to the ladder itself. Both Plaintiffs read and fully understood all the instructions and warnings that were delivered with or placed directly on the ladder.

On the day of Flora Loomis' accident, Plaintiffs set up the ladder together in the A-frame or stepladder configuration. Before Flora Loomis climbed the ladder, Plaintiffs verified that all four lock tabs were secured. Flora Loomis then climbed the ladder to hang some Christmas lights. After completing one section of lights, Flora Loomis moved

2

the ladder several feet by pushing it across the driveway.  She then climbed the ladder again to continue hanging the lights.  While reaching to hang the lights, Flora Loomis fell from the ladder and injured her left foot.

## II.    Discussion

### A.    Summary Judgment Standard

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  In considering a motion for summary judgment, the Court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences."  *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir.1991) (citation omitted).  Nonetheless, the movant is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B.    Plaintiffs' Revised Theories of Recovery and Liability

In response to Defendant's motions, Plaintiffs elected to narrow the theories of recovery on which they wish to proceed.  Plaintiffs proceed only on Count I (strict liability/product defect), Count II (strict liability/failure to warn), and Count VII (loss of

3

consortium) of the First Amended Complaint. Plaintiffs no longer proceed on Counts III through VI of the First Amended Complaint. In addition, Plaintiffs narrowly defined the theory of liability on which they base their products liability claim. Most notably, Plaintiffs abandoned their prior theory that a defect in one of the lock tabs caused it to suddenly disengage while Flora Loomis was on the ladder. Instead, Plaintiffs proceed on the theory that a lock tab was not fully engaged when the ladder was set up, but suddenly engaged, accompanied by a "popping" sound, while Flora Loomis was using the ladder. Plaintiffs contend that the startling effect of this noise and the ladder's capacity to be used in an unstable-useable configuration combined to cause Flora Loomis' accident.

### 1. Defendant's Entitlement to Summary Judgment on Counts III through VI

Defendant argues that it is entitled to summary judgment on Counts III through VI of the First Amended Complaint because Plaintiffs abandoned them and consequently did not respond to Defendant's motion with respect to these claims. Pursuant to Federal Rule of Civil Procedure 56(3), if a party fails to respond to its opponent's motion for summary judgment by setting forth specific facts showing that there is a genuine issue for trial, "summary judgment, if appropriate, shall be entered against the [nonresponsive] party." In addition, Local Rule 56.1(a) provides, "All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." This rule "exists to prevent a district court from engaging in the proverbial search for a needle in the haystack." *Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003). Accordingly, the

Court "will not sort through a voluminous record in an effort to find support for the plaintiff's allegations." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 801 (8th Cir. 2004).

Having reviewed Defendant's arguments regarding Counts III through VI and the relevant undisputed facts, admitted by Plaintiffs pursuant to Local Rule 56.1, and in light of the disposition of Plaintiffs' manufacturing and design defect claims, discussed below, Defendant is entitled to summary judgment on the claims in these four counts.

### C.    The Tests Performed by Plaintiffs' Expert

Defendant moves to exclude the tests and opinions of Plaintiffs' expert, Douglas Smith, Ph.D., P.E.  Dr. Smith performed three sets of tests and Defendant objects to each of them.  In the first set of tests, Dr. Smith designed a test to recreate the events during Flora Loomis' accident, as then theorized by Plaintiffs.  [Apr. 12, 2012 Smith Report at 11].  This test was designed to evaluate the ladder's response to the sudden disengagement of one of the ladder's lock tabs when set-up and loaded in the A-frame configuration, [Apr. 12, 2012 Smith Report at 12], and may be referred to as the "sudden disengagement test."  In the second set of tests, Dr. Smith tested the ladder's propensity to shift or "kick" when climbed after being placed in an unstable-useable configuration, meaning that, with the ladder in the A-frame configuration, the front and back sections of the ladder were pushed closer together.  [Aug. 27, 2012 Smith Report at 1].  This test may be referred to as the "compression test."  In the third set of tests, Dr. Smith set out to evaluate the side-to-side motion of the top of the ladder as viewed by someone climbing

5

the ladder. [Apr. 12, 2012 Smith Report at 9]. This test may be referred to as the "lateral-motion test."

Defendant argues that all three of these tests should be excluded because there is no nexus between any of these tests and the facts of this case. Expert testimony is only admissible if "it is relevant to the task at hand." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). This rule necessitates "'a preliminary assessment of whether the reasoning or methodology underlying the testimony . . . properly can be applied to the facts in issue.'" *Polski v. Quigley Corp.*, 538 F.3d 836, 838 (8th Cir. 2008) (quoting *Daubert*, 509 U.S. at 592-93). In other words, "the expert testimony must not only be based on reliable science but must also 'fit' the particular facts of the case." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055 (8th Cir. 2000). Thus, the Court must consider "whether the expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (quoting *Daubert*, 509 U.S. at 591). The focus of this inquiry is "the 'reasonableness of using such an approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant*.'" *Id.* (quoting *Kumho Tire Co.*, 526 U.S. at 154).

### 1. Inadmissibility of the Sudden Disengagement Test

Because Plaintiffs abandoned their theory that one of the lock tabs suddenly disengaged while Flora Loomis was using the ladder, Dr. Smith's sudden disengagement tests, and opinions resulting therefrom, are no longer relevant to this case. Regarding the

6

sudden disengagement test, Dr. Smith repeatedly stressed, "The objective of the test is to characterize the response of a loaded Model 26 ladder *following the sudden release of one of the lock assemblies*." [Apr. 12, 2012 Smith Report at 12] ("The purpose of this test is to characterize the response of the ladder *following a sudden release of a lock assembly . . . .*") (emphasis added). To test the effect of this failure, Dr. Smith constructed a pneumatic device that would suddenly release one of the lock assemblies. [Apr. 12, 2012 Smith Report at 12]. Dr. Smith then attempted to quantify the effect of this disengagement on the ladder's stability. *See* [Apr. 12, 2012 Smith Report at 13]. He found that the "sudden release of the lock assembly caused an immediate shift in load from the ladder foot beneath the releasing lock to the foot on the adjacent ladder leg." [Apr. 12, 2012 Smith Report at 12].

Although Plaintiffs no longer allege that one of the lock tabs suddenly disengaged while Flora Loomis was on the ladder, they maintain that the above testing is relevant to their theory that one of the lock tabs suddenly engaged while Flora Loomis was on the ladder. But Dr. Smith's test used a device constructed for the singular purpose of disengaging one of the lock tabs and his testing evaluated the ladder's response to this event. Any attempt to rely on this testing to infer what might have happened if the opposite had occurred, *i.e.* a lock tab suddenly engaged, would be pure conjecture.

Furthermore, Plaintiffs' attempt to salvage this portion of Dr. Smith's opinion is fundamentally inconsistent with Dr. Smith's report. Plaintiffs argue that "none of the tests performed by Dr. Smith is intended as a recreation of the accident, . . . ." [Doc. # 86 at 18]. But Dr. Smith began the section of his report on the sudden disengagement tests

7

by writing, "A ladder test was designed to recreate events during the fall of Mrs. Loomis from the Loomis ladder." [Apr. 12, 2012 Smith Report at 11]. This is the very first line in the section, appropriately titled, "Ladder Testing – *Accident Recreation*." [Apr. 12, 2012 Smith Report at 11] (emphasis added). Despite Dr. Smith's clear emphasis on accident recreation, Plaintiffs maintain that they "have not and will not represent that Dr. Smith's tests represent recreations of the event." [Doc. # 86 at 19].

It is difficult to see how Dr. Smith's testimony about the sudden disengagement tests can be relevant when Plaintiffs do not intend to offer Dr. Smith's testimony to prove what Dr. Smith designed this test to prove. Expert testimony is only admissible if it will assist the finder of fact in deciding an ultimate issue of fact. *Polski*, 538 F.3d at 839. Dr. Smith's testimony regarding the sudden disengagement test could only assist the jury in determining how the ladder would respond to the sudden disengagement of one of the lock tabs. As Plaintiffs no longer claim that one of the lock tabs disengaged while Flora Loomis was on the ladder, there is no connection between this testing and Plaintiffs' theory about what caused Flora Loomis' accident. Consequently, Dr. Smith's testimony, to the extent that it is based on the sudden disengagement test, is inadmissible.

## 2. Inadmissibility of the Compression Test

Defendant argues that Dr. Smith's compression test is irrelevant because Plaintiffs have failed to establish a connection between Dr. Smith's methodology and the events that occurred on the day Flora Loomis was injured. To perform the ladder compression test, Dr. Smith lifted up the rear of the ladder by tipping it backwards and made it come to rest in a way that would compress the front and rear sections. [Aug. 27 Smith Report

8

at 1].  Dr. Smith then pushed the front of the ladder several inches toward the rear in order to further compress the ladder.  [Aug. 27 Smith Report at 1].  These acts had to be performed carefully and deliberately to prevent the ladder from "kicking out" immediately.  [Aug. 27 Smith Report at 1].  By comparison, Flora Loomis testified that, prior to climbing the ladder, she pushed it in a straight line with both hands and that the ladder bumped and skidded along the ground as she pushed it.  [Flora Loomis Deposition at 113-14].  This is the only evidence cited by either party that bears on whether the ladder was or was not compressed in the manner Dr. Smith configured it for the compression test.

Consequently, Dr. Smith's compression test is inadmissible because Plaintiffs have not presented sufficient evidence for a jury to find that, at the time of Flora Loomis' accident, the ladder was compressed in the manner Dr. Smith stressed it for this test.  Plaintiffs argue that Flora Loomis' testimony does not prove that she did not position the ladder in the way Dr. Smith configured it.  Anything Dr. Smith did intentionally, Plaintiffs maintain, Flora Loomis could have done unintentionally.  But this argument misconstrues the parties' burdens.

As the proponent of Dr. Smith's testimony, Plaintiffs have the burden of establishing its admissibility by a preponderance of the evidence.  *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).  Plaintiffs' argument regarding what the evidence does not show fails to satisfy this burden.  Plaintiffs intend to submit Dr. Smith's testimony to prove that the alleged design defect, the capacity for the ladder to be used in an unstable-useable condition, caused or contributed to Flora Loomis' injury.  But

<div align="center">9</div>

Dr. Smith's testimony could only assist the jury in making this determination if the evidence showed or permitted the reasonable inference that on the day Flora Loomis was injured, the ladder was set up in a manner analogous to how Dr. Smith configured it. "Reasonable inferences are inferences which may be drawn from the evidence *without resort to speculation*." *Caudill v. Farmland Indus., Inc.*, 919 F.2d 83, 86 (8th Cir. 1990) (quotation omitted)). It is pure speculation to infer that the bumping and skidding of the ladder described by Flora Loomis caused it to be preloaded as Dr. Smith loaded it for his experiment. As such, the evidence does not permit the reasonable inference that on the day Flora Loomis was injured, the ladder was set up in a manner analogous to the way Dr. Smith compressed it. Consequently, this portion of Dr. Smith's testimony is inadmissible.

### 3. The Lateral Motion Test

For the lateral motion test, Dr. Smith placed the ladder on its side, parallel to the ground, with the front and rear legs at a ninety-degree angle. [Apr. 12, 2012 Smith Report at 9, 28]. Defendant argues that this test is not connected to the facts of this case because Flora Loomis positioned the ladder vertically in the A-frame configuration, which would have placed the legs at less than a twenty-five degree angle from one another. Plaintiffs respond that Dr. Smith's measurements of the ladder's general capacity to sway laterally is relevant because Flora Loomis testified that she felt the ladder rocking from right to left at the time of her accident. Therefore, Plaintiffs maintain, the lateral motion test is relevant because it shows whether the ladder could do what Flora Loomis claimed it did.

10

But Plaintiffs have not submitted any evidence connecting the ladder's characteristics when lying on its side parallel to the ground and its expected behavior when used as Flora Loomis used it. Dr. Smith testified that the lateral motion test shows how much relative motion there is between the top and bottom sections of the ladder, but that this test was not intended to show what would happen when a person is on the ladder. [June 5, 2012 Smith Deposition at 232]. In other words, Dr. Smith's test does not show the amount of lateral movement the ladder would exhibit when set up vertically with a person climbing or standing on it. [June 5, 2012 Smith Deposition at 231-32]. Plaintiffs claim that because Dr. Smith's test showed that the ladder is capable of exhibiting lateral movement, it is possible that it swayed when Flora Loomis was on it, as she described. But Plaintiffs have not presented any evidence linking the amount of lateral motion the ladder exhibited while lying on its side and the degree to which it is likely to sway while a person is standing on the ladder in the A-frame configuration. The lack of any meaningful connection between Dr. Smith's lateral motion test and the ladder's behavior during the incident at issue in this case renders this test inadmissible. *See Concord Boat Corp.*, 207 F.3d at 1055 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytic gap between the data and the opinion proffered. (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Having resolved the admissibility of Dr. Smith's testimony, the Court now turns to the submissibility of Plaintiff's remaining claims.

11

### D.    The Defective Product Claims

Defendant seeks summary judgment on Plaintiffs' defective product claims on the grounds that the undisputed facts show that the ladder was not defective when it was sold and, alternatively, that any alleged defect did not cause Flora Loomis to fall.  In order to establish a products liability claim under Missouri law, the plaintiff must show, among other things, that:  (1) the product was in a defective condition when it was sold; and (2) the plaintiff suffered damage as a direct result of the defective condition that existed when the product was sold.  *Dunn v. Nexgrill Indus., Inc.*, 636 F.3d 1049, 1057 (8th Cir. 2011) (citing *Columbia Mut. Ins. Co. v. Epstein*, 239 S.W.3d 667, 671 (Mo. Ct. App. 2007).  A defective condition may exist as a result of either a defect in the manufacturing or design of the product.  *Richcreek v. Gen. Motors Corp.*, 908 S.W.2d 772, 776 (Mo. Ct. App. 1995).  A manufacturing defect refers to the improper assembly of an individual product, whereas a design defect refers to a product that is unreasonably dangerous by the nature of its intended design.  *Id.*

### 1.    Existence of a Manufacturing Defect

Defendant argues that summary judgment is appropriate on Plaintiffs' manufacturing defect claim because it is undisputed that the alleged defect, a bent lock tab shaft, was not present when Plaintiffs purchased the ladder.  Both Plaintiffs testified that they inspected the ladder before using it for the first time and did not observe any defects which they believed made the ladder dangerous to use.  *See, e.g.*, [Deposition of Flora Loomis at 49, 62-63, 65-69]; [Deposition of Brian Loomis at 36].  Prior to Flora Loomis' accident, each Plaintiff also used the ladder on multiple occasions without

<div align="center">12</div>

incident.  *See, .e.g.*, [Flora Loomis Deposition at 42, 70-71]; [Brian Loomis Deposition at 35].  But both Plaintiffs also testified that they always had trouble with one of the four lock tabs.  Specifically, while three of the lock tabs could be engaged easily, there was "always" one that was harder to insert and required some extra effort on their part.  [Flora Loomis Deposition at 45, 50-51]; [Brian Loomis Deposition at 33-35].  Plaintiffs testified that they experienced this problem from their first use of the ladder.  *See, e.g.*, [Deposition of Flora Loomis at 51]; [Deposition of Brian Loomis at 33-34].  Dr. Smith found that one lock tab was difficult to engage because it had a bent shaft, [Apr. 12, 2012 Smith Report at 3], and testified that typical use of the ladder could not have caused this damage, [June 5, 2012 Smith Deposition at 421-23].

The evidence thus presents a material disputed fact as to whether or not the lock tab was bent when Plaintiffs received the ladder.  The testimony cited by Defendant shows that Plaintiffs either did not notice the bent lock tab shaft or did not believe that the difficult lock tab presented a dangerous defect.  But the evidence also shows that Plaintiffs experienced problems with this lock tab from the first time they used the ladder and that the problem they encountered was caused by a bend in the lock tab's shaft.  Furthermore, the evidence shows that this damage could not have been caused by ordinary use of the ladder and there is no evidence that Plaintiffs ever used the ladder in an atypical or incorrect manner.  Consequently, there is sufficient evidence for a reasonable juror to find that the ladder was sold with a bent lock tab shaft.  *See Pritchett v. Cottrell, Inc.*, 512 F.3d 1057, 1064 (8th Cir. 2008) (ruling that Missouri law permits a defect to be proven by circumstantial evidence "as long as the defect may be inferred

13

without resort to conjecture and speculation."). As such, there is a material disputed fact regarding whether or not the ladder was sold with a manufacturing defect.

### 2. Whether the Manufacturing Defect Caused the Accident

Defendant argues that, even if the lock tab shaft was bent when the ladder was sold, this could not have caused or contributed to Flora Loomis' accident because the undisputed facts show that all four lock tabs were fully engaged when Flora Loomis climbed the ladder. Brian Loomis testified that, on the day Flora Loomis was injured, he checked and double checked all of the lock tabs and made sure they were fully secured by visually inspecting them and physically pushing on them. [Deposition of Brian Loomis at 63, 65-70]. Flora Loomis testified that she watched her husband physically secure each lock tab, as they had done every time they used the ladder, and felt confident that each lock tab was fully engaged. [Flora Loomis Deposition at 44-46, 50-51, 104-05, 112-13]. Furthermore, Plaintiffs testified that they had used the ladder without incident multiple times prior to Flora Loomis' accident and that they were able to secure the lock tabs on each of these occasions. [Deposition of Flora Loomis at 42, 44-46]; [Deposition of Brian Loomis at 56-59]. Consequently, Defendant maintains that any difficulty in securing one of the lock tabs due to its bent shaft could not have caused Flora Loomis' injury because it is undisputed that all four lock tabs were fully inserted when she used the ladder.

Plaintiffs respond that there is still a disputed material fact on this point because Plaintiffs may have been mistaken as to whether all four lock tabs were engaged. In support, Plaintiffs cite Dr. Smith's opinion that the design of the lock assembly makes it

14

difficult to visually confirm that a lock tab is fully inserted. [Apr. 12, 2012 Smith Report at 3-4]. In addition, Plaintiffs refer to an incident during Flora Loomis' deposition where a lock tab made a "pop" sound as though it had engaged, but was then observed to not be fully inserted. *See* [Deposition of Flora Loomis at 57-60].

But Brian Loomis' testimony significantly undermines the relevance of this latter incident. Specifically, Brian Loomis testified that he checked all four lock tabs visually and physically to make sure that they were engaged. Plaintiffs thus did not rely on the sound of the lock tabs to ensure that they were fully inserted. This diminishes the significance of Plaintiffs' contention that, based on the incident during Flora Loomis' deposition, a lock tab can make a sound like it engaged but nonetheless not be fully secured. Furthermore, the very fact that during the deposition incident an onlooker was so readily able to observe that the lock tab was not fully inserted contradicts Plaintiffs' suggestion that it is difficult to see whether a lock tab is secured.

Dr. Smith's testimony also undermines this contention. Dr. Smith testified that he would still use a ladder with a bent lock tab shaft because the bend affects only the operation of the tab and the important structural feature is that the lock tab is fully inserted, which can be verified by pushing on it to make sure it is engaged. [June 5, 2012 Smith Deposition at 130-32]. He also testified that he could be sure by looking at the ladder that it is fully secure, despite the bend in the lock tab shaft. [June 5, 2012 Smith Deposition at 132-33]. During his deposition, Dr. Smith repeatedly confirmed via visual inspection that the lock tabs were fully secured, *see, e.g.*, [June 5, 2012 Smith Deposition at 140], and testified that he had no problem checking to see if a lock tab was locked,

15

[June 5, 2012 Smith Deposition at 423]. In addition, Dr. Smith demonstrated and testified that he could ensure a lock tab was locked in less than five seconds by visually inspecting the tab and hitting it with his hand. [June 5, 2012 Smith Deposition at 167]. Furthermore, Dr. Smith testified that he never sampled a single consumer on this issue and had no independent or objective basis to support the opinion expressed in his report that it is difficult to verify whether a lock tab is locked. [June 5, 2012 Smith Deposition at 423-25]. Considering that Dr. Smith had no trouble confirming that a lock tab was fully inserted, neither Plaintiff ever reported having difficulty verifying whether the lock tabs were secure, and Dr. Smith did not consult any third-parties on the matter, it is unclear what foundation, if any, provided the basis for the opinion expressed in Dr. Smith's report that it is difficult to verify whether a lock tab is locked.

Relying on the opinion in Dr. Smith's report that it is difficult to see whether a lock tab is fully engaged, a conclusion that the evidence overwhelmingly contradicts, Plaintiffs suggest that they might not have fully secured each lock tab on the day of Flora Loomis' accident. They maintain this position despite the fact that: 1) both Plaintiffs testified that they were sure that the lock tabs were engaged; 2) neither Plaintiff ever expressed any doubt on this issue; 3) both Plaintiffs testified that they had used the ladder without incident multiple times prior to Flora Loomis' accident and did not mention having any trouble making sure the lock tabs were engaged; and 4) Plaintiffs did not produce any direct evidence that one of the lock tabs was not fully inserted on the day of Flora Loomis' accident.

16

Moreover, even if the evidence was sufficient to create a genuine dispute over whether all of the lock tabs were fully inserted, Plaintiffs have not presented any evidence that shows a partially inserted lock tab could have suddenly engaged in the way they now claim that it did. Dr. Smith never performed any tests or calculations to show that a partially inserted lock tab could be made to suddenly engage by a person climbing the ladder. Plaintiffs seem to suggest that this is simply a matter of common sense, but the issue is more complex than Plaintiffs make it out to be. The question is whether a partially inserted but load-bearing lock tab can be made to suddenly slide into place as a result of the forces placed on the lock tab when an individual of Flora Loomis' weight uses the ladder. The answer depends on the amount and direction of the multitude of forces acting on the lock tab as the individual moves about on the ladder. Plaintiffs have not cited, and the Court's independent review of Dr. Smith's reports suggests that they cannot cite, any evidence, empirical or theoretical, that shows that their suggested version of events is possible.

In light of the above, Defendant is entitled to summary judgment on Plaintiffs' manufacturing defect claim because Plaintiffs' theory of causation is based entirely on speculation. *See, e.g.*, *Pritchett v. Cottrell, Inc.*, 512 F.3d 1057, 1064 (8th Cir. 2008) (holding that Missouri law permits a "defect to be proven by sufficient circumstantial evidence, as long as the defect may be inferred without resort to conjecture and speculation." (quotation omitted)); *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) ("Although we review the facts in the light most favorable to the non-moving party, we do not accept unreasonable inferences or sheer speculation as fact.");

*Caudill v. Farmland Indus., Inc.*, 919 F.2d 83, 86 (8th Cir. 1990) ("Reasonable inferences are inferences which may be drawn from the evidence *without resort to speculation*." (quotation omitted)). Based on the evidence discussed above, no reasonable juror could infer, without speculation, that one of the lock tabs was only partially inserted and then suddenly engaged while Flora Loomis was on the ladder. *Cf. Caudill*, 919 F.2d at 87 ("We do not believe that a jury verdict based on such improbable conjecture can be permitted to stand."). Consequently, Plaintiffs have failed to present evidence sufficient to show that the alleged manufacturing defect caused or contributed to Flora Loomis' accident and Defendant is entitled to summary judgment on this claim.

### 3. Design Defect

In order to succeed on a design defect claim under Missouri law, "the plaintiff bears the burden to demonstrate that the product design was defective and that the defect caused the plaintiff's injury." *Pritchett v. Cottrell, Inc.*, 512 F.3d 1057, 1063 (8th Cir. 2008). Missouri courts "have stated that unreasonable danger and causation are 'the heart and soul' of a design defect case." *Id.* (quoting *Richcreek*, 908 S.W.2d at 776). Plaintiffs' theory of design defect is that the ladder was unreasonably dangerous because it could be used in an unstable-useable configuration, as demonstrated by Dr. Smith's compression and lateral motion tests.

In light of the inadmissibility of Dr. Smith's testing, discussed above, Plaintiffs do not have any evidence to support their claim that the ladder had a design defect. But even if Dr. Smith's testimony were admissible, Defendant would be entitled to summary judgment on this claim for the same reasons that Dr. Smith's testimony is inadmissible.

18

While Dr. Smith demonstrated that the ladder, as designed, could exhibit some arguably dangerous characteristics, Plaintiffs have not presented any evidence that the characteristics Dr. Smith identified caused or contributed to Flora Loomis' accident. The mere existence of a defect is not sufficient to support a claim for products liability. Plaintiffs must also prove that the alleged defect caused the injury in question.

As discussed at length above, Plaintiffs have not submitted any evidence that Flora Loomis compressed the ladder's front and rear legs in the manner Dr. Smith carefully and deliberately positioned them to perform the compression tests. Similarly, while Dr. Smith's lateral motion test showed the amount of lateral movement the ladder could exhibit while lying on its side, Plaintiffs have presented no evidence connecting this data with the expected behavior of the ladder while used in the way Flora Loomis used it. Consequently, there is no evidence from which a jury could conclude that the alleged design defect caused Flora Loomis' injury and Defendant is entitled to summary judgment on this claim.

### E.     Failure to Warn

To recover on a theory of strict liability for failure to warn under Missouri law, the plaintiff must show, *inter alia*, that she "was damaged as a direct result of the product being sold without an adequate warning." *Campbell v. Am. Crane Corp.*, 60 F.3d 1329, 1331 (8th Cir. 1995) (citing *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 13 (Mo. 1994) (en banc)). "[T]here are two separate requirements of causation in a failure to warn case: (1) the product for which there was no warning must have caused [the plaintiff's] injuries, and (2) the plaintiff must show that a warning would have altered the behavior of

those involved in the accident." *Id.* A failure to warn claim differs from a design defect claim in that it is possible to find that a product is not unreasonably dangerous in itself, but nonetheless conclude that the absence of a sufficient warning about the product's dangerous characteristics rendered the otherwise non-defective product unreasonably dangerous. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 757 (Mo. 2011) (en banc).

Plaintiffs argue that the ladder's warnings were deficient in two respects. First, they claim that the ladder's warnings did not adequately convey the need to make sure that all of the lock tab assemblies were fully engaged. On this point, the record is devoid of any evidence that suggests a stronger warning would have altered Plaintiffs' behavior. The ladder's instructional manual contained the following warning: "WARNING: LOCK TAB ASSEMBLIES MUST BE INSERTED INTO AN INNER LADDER ASSEMBLY RUNG HOLE. FAILURE TO DO SO MAY RESULT IN INJURY." [Doc. # 79-6 at 9]. Plaintiffs testified that they read and understood the ladder's instructions and warnings, [Flora Loomis Deposition at 34-35, 48, 55-56]; [Brian Loomis Deposition at 36-37, 41], realized the importance of making sure that all of the lock tabs were fully engaged, [Flora Loomis Deposition at 52-53]; [Brian Loomis Deposition at 42-43], checked and rechecked to confirm that the lock tabs were secured on the day of Flora Loomis' accident, [Brian Loomis Deposition at 65-70], and were confident that the lock tabs were engaged that day, [Flora Loomis Deposition at 112-13]; [Brian Loomis Deposition at 70].

Nonetheless, Plaintiffs argue that the evidence permits two interpretations. Either they studied the ladder very closely the day Flora Loomis was injured and were correct

that the lock tabs were locked, or they studied the ladder very closely and nonetheless reached an incorrect conclusion on this point. Setting aside the fact that, as discussed previously, the latter interpretation is based purely on conjecture, the fact remains that in both scenarios Plaintiffs studied the lock tabs very closely to make sure that they were engaged. There is no evidence that suggests any additional warning would have caused them to inspect the lock tabs even more diligently. Consequently, there is no evidence from which a jury could conclude that an additional or different warning would have altered Plaintiffs' behavior and Defendant is entitled to summary judgment on this claim.

Plaintiffs' second theory, that the ladder's instructions and warnings were insufficient to inform the user of the danger of setting the ladder up in an unstable-useable configuration, suffers from the same deficiency. Plaintiffs maintain that Dr. Smith's opinions show that the ladder's instructions would not prevent a user from positioning the ladder in the unstable-useable configuration Dr. Smith identified in the compression tests. As discussed at length above, however, Plaintiffs have not presented any evidence that Flora Loomis set up the ladder in this compressed configuration. Consequently, there is no evidence from which to conclude that more detailed instructions or an additional warning would have altered Flora Loomis' behavior. Furthermore, because there is no evidence that Flora Loomis set up the ladder in the alleged unstable-useable configuration, Plaintiffs cannot show that Flora Loomis was injured as a direct result of the absence of a warning about this characteristic, which is an essential element of a failure to war claim, *Campbell*, 60 F.3d at 1331. Defendant is thus entitled to summary judgment on this claim.

## III.    Conclusion

For the foregoing reasons, Defendant's motion to exclude the testing and opinions of Dr. Smith [Doc. # 78] is GRANTED in part.  Furthermore, for the reasons discussed above, Defendant is entitled to summary judgment on Counts I through VI of the First Amended Complaint.  The only remaining count, Count VII, asserts a claim for loss of consortium on behalf of Brian Loomis, which is derivative of the claims in Counts I through VI.  Accordingly, Defendant's motion for summary judgment [Doc. # 80] is GRANTED.  Plaintiff's motion to exclude the expert testimony of Dr. Knox [Doc. # 67] is DENIED as moot.

<div style="margin-left:40%;">

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

</div>

Dated:  January 22, 2013
Jefferson City, Missouri